LEROY BLITZKIE, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.
422 N.W.2d 773

Filed May 6, 1988.　No. 85-1008.

**I**

Jewell, Gatz & Collins, and Gremer, Koenig, Murray, Johnson & Daley, for appellant.

Robert M. Spire, Attorney General, and John R. Thompson, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

SHANAHAN, J.

Pursuant to the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 et seq. (Reissue 1981), LeRoy Blitzkie filed a negligence action against the State of Nebraska. The district court for Boyd County entered summary judgment that the court lacked jurisdiction to litigate Blitzkie's claim and dismissed the action. We affirm in part and, in part, reverse and remand for further proceedings.

Blitzkie, a livestock owner residing in Boyd County, filed his amended petition in the district court for Boyd County and alleged negligence of the State in 1979, namely, failure to notify Blitzkie about a virulent and readily communicable livestock disease, pseudorabies, which existed in the area of Blitzkie's farm and later infected his herd. Without objecting to venue, the State filed its answer in 1981 and admitted that pseudorabies was a transmissible disease, but denied that the State was negligent, and further denied that Blitzkie's damages were as extensive as alleged. At the conclusion of its answer, the State prayed for judgment in its favor and dismissal of Blitzkie's petition. Approximately 11 months later, the State filed a motion to dismiss, claiming that the State's conduct alleged in Blitzkie's petition constituted discretionary functions exempted from actionable conduct under the State Tort Claims Act. See § 81-8,219(1)(a). In its motion to dismiss, the State also claimed the court lacked jurisdiction, because "All acts or omissions alleged by plaintiff occurred in Lancaster County, Nebraska and any action thereon must be brought only in said Lancaster County . . . ." Although the parties appeared for argument on

the State's motion to dismiss, the district court treated the State's motion to dismiss as a motion for summary judgment, granted summary judgment, namely, the State's conduct was discretionary conduct "within the specific exemption of the scope of the Tort Claims Act," and dismissed Blitzkie's petition, notwithstanding the court's departure from civil procedure governing disposition by summary judgment, which afforded Blitzkie 10 days in which to respond to or counter the State's evidence for a summary judgment. See Neb. Rev. Stat. § 25-1332 (Reissue 1985). Blitzkie appealed from that summary judgment and dismissal of his action. In *Blitzkie v. State*, 216 Neb. 105, 107, 342 N.W.2d 5, 6 (1983), we reversed the dismissal of Blitzkie's action and stated: "However, it is apparent that one against whom a motion for summary judgment is invoked must be given at least 10 days from filing the same to respond with counteraffidavits or depositions. Neb. Rev. Stat. § 25-1332 (Reissue 1979). This opportunity was not afforded the plaintiff."

While Blitzkie's case was pending after remand, we decided *Wickersham v. State*, 218 Neb. 175, 354 N.W.2d 134 (1984), a case brought under the State Tort Claims Act for the State's negligent conduct virtually identical to that alleged by Blitzkie. The *Wickersham* opinion was issued on August 3, 1984.

As reflected in *Wickersham v. State, supra,* Wickersham lived and ranched in Sioux County. The offices of the Nebraska Department of Agriculture and the State Veterinarian were located in Lancaster County. As the result of Neb. Rev. Stat. § 54-701 (Reissue 1984), the State had " 'the duties of protecting the health of livestock in Nebraska, of determining and employing the most efficient and practical means for the prevention, suppression, control and eradication of dangerous, infectious, contagious or otherwise transmissible diseases among domestic animals . . . .' " 218 Neb. at 177, 354 N.W.2d at 137. Among its duties for official eradication of livestock disease, the State was required to undertake blood tests of cattle exposed to brucellosis, a highly contagious disease, and contact owners of exposed herds for further testing. The State detected brucellosis in the herd from which Wickersham had purchased his cattle and knew about Wickersham's purchase. Months

later, the State tested Wickersham's cattle and ascertained that his cattle were infected with brucellosis. Wickersham filed suit in Lancaster County, alleging the State's negligence in failure to notify him about the brucellosis situation and promptly inspect his herd. The State obtained a summary judgment that Lancaster County was not the proper venue for the proceedings. The State contended that venue of Wickersham's suit was somewhere outside Lancaster County, because any harm " 'could only manifest itself in Sioux County.' " 218 Neb. at 183, 354 N.W.2d at 140. In *Wickersham v. State, supra,* we examined § 81-8,214:

> The district court, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any suit or tort claim as defined in this act. Suits shall be brought in the district court of the county in which the act or omission complained of occurred, or if the act or omission occurred outside the boundaries of the State of Nebraska, in the district court for Lancaster County.

Holding that the proper venue for Wickersham's action was Lancaster County, we stated in *Wickersham*:

> "Jurisdiction is the inherent power or authority to decide a case; venue is the place of trial of an action—the site where the power to adjudicate is to be exercised." *State ex rel. Bauersachs v. Williams,* 215 Neb. 757, 759, 340 N.W.2d 431, 433 (1983). Clearly, under § 81-8,214 the district court has subject matter jurisdiction to hear, determine, and render judgment concerning any tort claim defined in the State Tort Claims Act. . . .
>
> . . . .
>
> The question presented in Wickersham's case is, Where did the act or omission occur? More simply, Where's the venue? The answer to the question lies in the definition of the word *occur.* . . . In reference to the State Tort Claims Act, § 81-8,214, "the county in which the act or omission occurred" means the site where the wrongful conduct actually takes place, not where the results of the wrongful conduct take place or occur. Occur does not include the results of the act or omission, but only the taking place,

happening, or coming to pass. . . .

. . . In the final analysis, all people responsible for decisions and action regarding Wickersham's problem were in Lancaster County. Consequently, the correct venue of Wickersham's action is Lancaster County.

(Emphasis in original.) 218 Neb. at 183-85, 354 N.W.2d at 140-41.

Thus, *Wickersham* emphasized the distinction between jurisdiction and venue and acknowledged the criterion for determining proper venue of litigation under the State Tort Claims Act, namely, the place where the State's tortious act or omission occurred or took place. See § 81-8,214. *Wickersham* rejected the State's misconception that venue for litigation of a tort claim against the State is determined by the situs of damage to a claimant. As we observed in *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984), misconduct and damage are related as cause and effect.

On November 2, 1984, approximately 3 months after *Wickersham*, Blitzkie requested that the proceedings be transferred to Lancaster County "in accordance with § 24-324," which in part provides:

[T]he rules of pleading and practice in regard to other civil actions in the district court shall be observed in all actions by or against the state, as far as applicable except as otherwise herein provided; *Provided*, that when an action has been commenced in a county other than as specified herein, the court in which the action has been commenced shall have jurisdiction over such action, but upon timely motion by a defendant, the court shall transfer the action to the proper court in the county in which the action should or might have been commenced as herein provided. The court in the county to which the action is transferred, in its discretion, may order the plaintiff to pay to the defendant all reasonable expenses, including attorney fees of the defendant or defendants, incurred because of the improper venue or in proceedings to transfer such action.

Neb. Rev. Stat. § 24-324 (Reissue 1985).

Without stating its reason, the district court, on July 31,

1985, overruled Blitzkie's motion to transfer the proceedings to Lancaster County. At that point, Blitzkie's suit had been on file for at least 4 years, and the State had not objected to venue in Boyd County but had objected only to subject matter jurisdiction by the court. On October 23, 1985, through the same attorney who had been acting as the State's attorney since the inception of Blitzkie's lawsuit, the State filed a motion for summary judgment to dismiss Blitzkie's action for "lack of jurisdiction." To support its request for summary judgment, the State alleged: "The acts or omissions complained of by Plaintiff all occurred in Lancaster County, Nebraska, and any action thereon must be brought in said County, this Court therefore has no *jurisdiction* of the subject matter of this action." (Emphasis supplied.) The State further alleged that, based on "[t]he pleadings, all filings herein, the Defendant's answers to supplemental interrogatories, [and] the Defendant's responses to requests for admissions," there was "no genuine issue as to any material facts with regard to the *jurisdiction* of the court." (Emphasis supplied.) In granting summary judgment, the district court stated:

I find that there is no genuine issue of material fact in this case insofar as jurisdiction is concerned, and that the facts in this case show that *this court does not have jurisdiction of the case*, and the defendant is entitled to a summary judgment dismissing the petition of the plaintiff.

(Emphasis supplied.) The court thereupon dismissed Blitzkie's petition with prejudice; hence, the present appeal.

We note a statute in addition to § 24-324 for transfer of an action, namely, Neb. Rev. Stat. § 25-403.01 (Cum. Supp. 1986) concerning a change of venue in transitory tort actions, and still another statute for transfer of a civil action for "the convenience of the parties and witnesses or in the interest of justice," Neb. Rev. Stat. § 25-410 (Reissue 1985).

Also noteworthy is § 81-8,216, which provides:

In all suits brought under this act, the district courts shall follow the rules of civil procedure applicable to private litigants, and costs shall be allowed in all courts to the successful claimant to the same extent as if the state was a private litigant. Judgments shall be subject to appeal

to the Supreme Court in the same manner as other judgments of the district court.

Blitzkie claims that the district court erred in (1) entering a summary judgment that the district court lacked jurisdiction regarding the tort claim; (2) finding that the State had not waived an objection to venue in Boyd County; and (3) refusing to transfer the proceedings to Lancaster County.

The State argues that "venue requirements are jurisdictional and cannot be waived." Brief for Appellee at 13. To support its position that the district court for Boyd County lacked jurisdiction as the result of improper venue, the State relies on *Catania v. The University of Nebraska*, 204 Neb. 304, 282 N.W.2d 27 (1979), in which this court held that the State's objection to jurisdiction on account of improper venue should have been sustained and Catania's action dismissed. In *Catania*, the court said:

> It is true that in O'Hara v. Davis, 109 Neb. 615, 192 N.W. 215 (1923), we said: "The right to defend in the particular district is not a matter of jurisdiction, but of venue only, and the privilege may be waived." . . .
>
> . . . .
>
> In order to sue the State of Nebraska or one of its agencies under the Tort Claims Act, the requirements of the act must be followed strictly and the petition filed in the District Court for the county in which the alleged wrongful act or omission took place. In the absence of specific legislative authority, neither the state nor one of its agencies may waive those jurisdictional requirements.
>
> It is fundamental that want of jurisdiction of the subject matter of the action is a defect which requires the court to proceed by dismissal of the case or other suitable action. [Citation omitted.]

204 Neb. at 312, 315-16, 282 N.W.2d at 32-33.

Subject to certain exempted claims, the State Tort Claims Act provides for the State's liability for its torts the same as a private person may be liable for torts. § 81-8,215; *Cortes v. State*, 191 Neb. 795, 218 N.W.2d 214 (1974).

Section 81-8,214 of the State Tort Claims Act provides:

> The district court, sitting without a jury, shall have

exclusive jurisdiction to hear, determine, and render judgment on any suit or tort claim as defined in this act. Suits shall be brought in the district court of the county in which the act or omission complained of occurred, or if the act or omission occurred outside the boundaries of the State of Nebraska, in the district court for Lancaster County.

As is self-evident, § 81-8,214 contains two sentences. The first sentence in that statute provides: "The district court, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any suit or tort claim as defined in this act." The foregoing statutory excerpt relates to jurisdiction, the power to litigate tort claims against the State, which is conferred on the district courts of the State of Nebraska. See *Wickersham v. State*, 218 Neb. 175, 354 N.W.2d 134 (1984). The second sentence of § 81-8,214 states: "Suits shall be brought in the district court of the county in which the act or omission complained of occurred, or if the act or omission occurred outside the boundaries of the State of Nebraska, in the district court for Lancaster County." This second sentence of § 81-8,214 indicates the place of venue, the site for litigation of the tort claim against the State. Thus, § 81-8,214 pertains to jurisdiction and venue, which are distinctly different aspects of tort litigation against the State. Although we have pointed out the distinction between "jurisdiction" and "venue," see *Wickersham v. State, supra*, the State fails to recognize such distinction of those terms and concepts fundamental to litigation.

The distinction between jurisdiction and venue concerning a tort claim against the State was recognized in *Hyde v. Buckalew*, 393 N.W.2d 800 (Iowa 1986), which involved a claim against the State under the Iowa Tort Claims Act. The motor vehicle negligence action was commenced in a county other than the place of the accident or the plaintiff's residence. The State filed answers without raising any issue of jurisdiction or venue. Later, however, the State filed a motion to dismiss the claim, basing its motion on the trial court's alleged lack of jurisdiction in view of the Iowa Tort Claims Act (Iowa Code § 25A.4 (1983)), which provided in pertinent part:

"The district court of the state of Iowa for the district in which the plaintiff is resident or in which the act or omission complained of occurred, or where the act or omission occurred outside of Iowa and the plaintiff is a nonresident, the Polk county district court has exclusive jurisdiction to hear, determine, and render judgment on any suit or claim as defined in this chapter. However, the laws and rules of civil procedure of this state on change of place of trial apply to such suits."

393 N.W.2d at 801.

In *Hyde*, the district court granted the State's motion to dismiss for lack of jurisdiction, but on appeal the Iowa Supreme Court, recognizing the difference between jurisdiction and venue, reversed the dismissal, ordered reinstatement of the action, and stated:

The first question we must answer is whether the portion of this statute relied on by the State—the language identifying locations where district courts may hear state tort claims—circumscribes the jurisdiction of the district court or is merely a venue provision which the state may waive. The district court granted the State's motion to dismiss without addressing the difference between jurisdiction and venue. . . . We deem the distinction between jurisdiction and venue crucial to a correct disposition of the motion to dismiss. We conclude the issue characterized by the State as a matter of subject matter jurisdiction is really a question of venue which the State waived by filing its answer before protesting that defendants had chosen the wrong forum.

Iowa Code chapter 25A, the Iowa Tort Claims Act, grants only a limited waiver of sovereign immunity, and the State may be sued in tort only to the extent provided in that chapter. [Citations omitted.] The issue whether the legislature intended to waive its sovereign immunity with respect to a particular type of claim is a matter of jurisdiction, the power of the court to hear and adjudicate a particular class of cases, and the State may raise that issue by motion to dismiss at any stage of the proceeding. [Citations omitted.]

Venue, on the other hand, is ordinarily not jurisdictional but refers to the place where the cause sued upon should be tried. [Citation omitted.] Iowa Rule of Civil Procedure 175(a) specifically provides in part: "An action brought in the wrong county may be prosecuted there until termination, unless a defendant, before answer, moves for its change to the proper county." [Citations omitted.]

For two reasons we believe the language of section 25A.4 concerning the location of the court which should "hear, determine and render judgment on any suit or claim" limits venue but not jurisdiction of the district court.

Section 25A.4 explicitly provides in its second sentence: "However, the laws and rules of civil procedure of this state on change of place of trial apply to such suits." One rule of civil procedure concerning change of place of trial which that sentence incorporates by reference is the above-quoted portion of rule 175(a) which in essence requires a defendant "before answer" to move for a change of venue to the proper county, the objection otherwise being waived. We construe section 25A.4 to give Iowa district courts . . . exclusive jurisdiction over state tort claims, but we treat the place of trial as a matter of venue governed by section 25A.4 and by other "laws and rules of civil procedure," including rule 175(a).

393 N.W.2d at 801-02.

In *Ringling Bros.-Barnum & Bailey Com. Sh., Inc. v. State*, 295 So. 2d 314 (Fla. App. 1974), the claimant commenced suit in a county other than that specified for an action against a state official, but the court, holding that the action could be transferred to the proper county or venue specified by statute, made the following observations and comments:

It is imperative that we first draw a clear line of demarcation between venue and jurisdiction. Courts as well as text writers have from time to time used the terms interchangeably, thereby adding to an already existing state of confusion. [Citations omitted.]

Venue refers to the geographical area, that is, the

county or district, wherein a cause may be heard or tried. It concerns the privilege of being accountable to a court in a particular location. [Citations omitted.] Venue is not the same as jurisdiction. [Citations omitted.] The privilege of a defendant to be sued in a particular locality does not involve the question of jurisdiction. [Citation omitted.] The question as to whether the State, its agencies, boards and other subentities may be sued at the seat of government or at the place of its official headquarters is a question of venue and is not one of jurisdiction over the subject matter of the litigation. [Citations omitted.]

295 So. 2d at 315. It continued:

Jurisdiction is basically an expression of sovereign power; and a judgment or decree rendered without power and jurisdiction of the parties and subject matter is void. Florida's venue statutes do not confer territorial jurisdiction, but presupposes [sic] that the court has jurisdiction of the subject matter of the action as well as of the parties. Neither consent, acquiescence nor waiver can confer jurisdiction as the subject matter which is not within the power of the court to adjudicate. On the other hand venue may be changed by consent, acquiescence or waiver. Incorrect venue may be waived by the failure of a defendant to make a timely objection or by stipulation, agreement or consent.

295 So. 2d at 316.

In *Ringling Bros.-Barnum & Bailey Com. Sh., Inc. v. State, supra,* the court concluded that the statutory requirement that state officials be sued in the county of their residence may be waived by the state and venue placed in any other county with a court having subject matter jurisdiction. See, also, *Gay v. Ogilvie,* 47 So. 2d 525 (Fla. 1950) (the question whether a state agency must be sued in the county where the seat of government is located or may be sued in another county is a question of venue and not of jurisdiction over subject matter of the litigation). See, further, *Upchurch v. Piper Aircraft Corp.,* 736 F.2d 439 (8th Cir. 1984) (under federal Tort Claims Act, the statute specifying venue as the place where the plaintiff resided or where tortious conduct occurred is not a jurisdictional

statute but a venue statute).

As the result of § 81-8,214, the district court for Boyd County had subject matter jurisdiction over Blitzkie's tort claim against the State. However, in accordance with § 81-8,214 and *Wickersham v. State*, 218 Neb. 175, 354 N.W.2d 134 (1984), the proper venue for Blitzkie's tort action was Lancaster County, the place where the State's "act or omission complained of occurred."

Because "jurisdiction" and "venue" are not synonymous and interchangeable functions in litigation, any language in *Catania v. The University of Nebraska,* 204 Neb. 304, 282 N.W.2d 27 (1979), indicating that jurisdiction and venue are synonymous and interchangeable is expressly disapproved. Insofar as *Catania, supra,* stands for the proposition that venue is a jurisdictional aspect of litigation under the State Tort Claims Act, *Catania* is overruled.

Regarding denial of a change of venue and transfer of Blitzkie's action to Lancaster County, the State argues that the district court's refusal to transfer is correct on account of *Miller v. State*, 208 Neb. 170, 302 N.W.2d 692 (1981), a suit against the State for negligently constructing a highway. In *Miller*, the plaintiff's decedent was injured when his automobile was struck by an oncoming truck, which had dropped off the highway's improperly constructed surface in Wheeler County and veered into the path of Miller's automobile. The action was filed in Lancaster County, and "the action was dismissed because it had not been filed in Wheeler County, the county where the accident occurred." 208 Neb. at 171, 302 N.W.2d at 693. In *Miller*, this court stated:

> The plaintiff requested that in the event the trial court determined the action could not be brought in Lancaster County, the action be transferred to Wheeler County. This request was properly denied. The statutory provisions authorizing the transfer of an action where the venue was improper are not applicable to suits under the state Tort Claims Act. *Catania v. The University of Nebraska*, 204 Neb. 304, 282 N.W.2d 27 (1979).

208 Neb. at 172, 302 N.W.2d at 694.

In evaluating the district court's refusal to transfer Blitzkie's action to Lancaster County, we cannot disregard the

unequivocal and clear mandate of § 81-8,216, namely: *"In all suits brought under [the State Tort Claims Act], the district courts shall follow the rules of civil procedure applicable to private litigants . . . ."* (Emphasis supplied.)

In *Pointer v. State*, 219 Neb. 315, 363 N.W.2d 164 (1985), we considered the State's waiver of the service of summons on the Attorney General, as required by § 81-8,212 of the State Tort Claims Act. Pointer caused summons to be served on the Secretary of State of Nebraska. Notwithstanding the erroneous service of summons, Pointer's suit continued with various forms of pleading and other procedural activity. Two days after the statutorily prescribed deadline for filing a petition under the State Tort Claims Act, the State filed a motion to dismiss, raising the issue of lack of jurisdiction due to the improper service of summons. Although the State Tort Claims Act specifically designated the person on whom service of summons must be made, in *Pointer* we stated:

> *"If the state has consented to be sued*, a failure to serve process in an action against it is immaterial if the attorney general appears voluntarily . . . ." [Emphasis in original.] 81A C.J.S. *States* § 321 at 1007 (1977).
>
> . . . .
>
> . . . [W]here the Legislature has waived the State's sovereign immunity as to a particular cause of action and has designated a person or official as the agent of the State upon whom summons may be served, that person or official validly may enter a voluntary appearance for the State, thereby waiving the issue of *in personam* jurisdiction. [Emphasis in original.]

219 Neb. at 317-18, 363 N.W.2d at 166.

"Where the court has general jurisdiction of the subject matter, the right of a defendant to be sued in a particular county or district is a mere personal privilege which he may waive." 92 C.J.S. *Venue* § 77 at 774 (1955). See, also, *id.*, § 124 at 820: "Venue statutes are generally regarded as conferring a personal privilege which may be waived by the defendant." In *Peitz v. Hausman*, 198 Neb. 344, 252 N.W.2d 628 (1977), an automobile negligence case, this court held that the question of improper venue in a transitory action is waived unless raised in

the answer or by an earlier timely objection before answer. See, also, *Corn Belt Products Co. v. Mullins,* 172 Neb. 561, 110 N.W.2d 845 (1961). See, further, *Upchurch v. Piper Aircraft Corp.,* 736 F.2d 439 (8th Cir. 1984) (government may waive venue specified in the federal Tort Claims Act).

Before answering and in its answer, the State did not object or question that Boyd County was the proper venue for Blitzkie's tort action. Only after its answer did the State raise any question about maintaining the action in Boyd County, a question directed not toward venue but to the district court's "lack of jurisdiction." If the State's allegations in its motion for summary judgment are accepted at face value as true, the State became involved in a great deal of litigious activity in Blitzkie's case, namely, pleadings, answers and supplemental answers to interrogatories, and answers to requests for admission. In any event, the State waived an objection to Boyd County venue, a waiver which would have been the situation if the State were a "private litigant" under the circumstances.

As part of the civil procedure applicable to suits brought under the State Tort Claims Act, a district court is authorized, under appropriate circumstances, to change the venue of the proceedings or otherwise transfer the site for trial. See § 81-8,216. Therefore, the statement in *Miller v. State,* 208 Neb. 170, 172, 302 N.W.2d 692, 694 (1981), "The statutory provisions authorizing the transfer of an action where the venue was improper are not applicable to suits under the state Tort Claims Act" is expressly disapproved. Insofar as *Miller, supra,* holds that an action brought under the State Tort Claims Act but commenced in an improper venue cannot be transferred in accordance with statutory provisions properly applicable to a change of venue or transfer of action, *Miller* is overruled.

In the absence of an abuse of discretion by the trial court, the Supreme Court will uphold the trial court's ruling on a request for a change of venue. *Bittner v. Miller,* 226 Neb. 206, 410 N.W.2d 478 (1987); *Johnsen v. Parks,* 189 Neb. 712, 204 N.W.2d 804 (1973); *Satterfield v. Watland,* 180 Neb. 386, 143 N.W.2d 124 (1966). Section 24-324 pertains to a change of venue or transfer of an action on the "timely motion by a defendant." But Blitzkie is a plaintiff. Therefore, Blitzkie could

not obtain a change of venue or transfer of proceedings pursuant to § 24-324. Blitzkie's status as a plaintiff was probably the reason that the district court denied Blitzkie's motion. We find no abuse of discretion in denying Blitzkie's motion to transfer the proceedings to Lancaster County.

Nevertheless, because the State waived any question about venue specified by § 81-8,214, proceedings may be maintained in the district court for Boyd County.

Consequently, the district court's judgment denying Blitzkie's motion for transfer to Lancaster County is affirmed, but the judgment of the district court, namely, dismissal on account of lack of jurisdiction, is reversed, and this matter is remanded to the district court for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

BRODKEY, J., Retired, dissenting.

I must respectfully dissent from the opinion of the majority of the court, as set out above, for the following reasons.

This case arose as a cause of action brought under the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 et seq. (Reissue 1981), which provides, among other things:

> The district court, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any suit or tort claim as defined in this act. Suits shall be brought in the district court of the county in which the act or omission complained of occurred, or if the act or omission occurred outside the boundaries of the State of Nebraska, in the district court for Lancaster County.

§ 81-8,214.

The majority opinion seeks to overrule *Catania v. The University of Nebraska*, 204 Neb. 304, 282 N.W.2d 27 (1979), and *Miller v. State*, 208 Neb. 170, 302 N.W.2d 692 (1981), both cases having been well-established precedents in our jurisdiction.

Neb. Const. art. V, § 22, empowers the Legislature to provide by law in what manner and in what courts suits shall be brought. I am of the opinion that the Legislature, acting pursuant to this power, enacted the State Tort Claims Act in

language which, when reasonably construed, requires proper venue as a necessary prerequisite or as a condition precedent to jurisdiction.

I am in agreement with the opinion of the court in *Catania, supra,* which interpreted the State Tort Claims Act and held that venue is a jurisdictional requirement under that act.

The majority opinion in this case appears to take the position that the State is to be treated as a private litigant under the State Tort Claims Act, and has thus waived venue. This finding, I believe, is directly contrary to well-established authority in our jurisdiction. In *Catania, supra,* this court stated:

> In order to sue the State of Nebraska or one of its agencies under the Tort Claims Act, the requirements of the act must be followed strictly and the petition filed in the District Court for the county in which the alleged wrongful act or omission took place. In the absence of specific legislative authority, neither the state nor one of its agencies may waive those *jurisdictional* requirements.

(Emphasis supplied.) 204 Neb. at 315, 282 N.W.2d at 33. See, also, *Pointer v. State,* 219 Neb. 315, 363 N.W.2d 164 (1985).

I note that the majority opinion cites the Iowa Tort Claims Act, Iowa Code § 25A.4 (1983), as a model for us. On the other hand, the Nebraska State Tort Claims Act differs significantly from the Iowa statute, because the latter is much more general, expressly providing for alternative venue, whereas the Nebraska State Tort Claims Act prescribes only one proper venue. Admittedly, venue is not jurisdictional according to the law of Iowa, nor is venue jurisdictional under the federal Tort Claims Act, which is also an instructive model. But the fact remains that we are called upon to interpret the Nebraska State Tort Claims Act. If we were to read into our act more than the Legislature expressly provided, we are perilously close to engaging in judicial legislation. Similarly, the Florida case of *Ringling Bros.-Barnum & Bailey Com. Sh., Inc. v. State,* 295 So. 2d 314, 315 (Fla. App. 1974), is cited by the majority as authority for the proposition that "[v]enue is not the same as jurisdiction." However, there is no Florida counterpart to the Nebraska State Tort Claims Act. I believe that the line of authority which is spelled out in the cases cited above, to wit,

*Miller*, *Catania*, and also *Wickersham v. State*, 218 Neb. 175, 354 N.W.2d 134 (1984), reflects an entirely different policy than those contained in both Florida and Iowa.

After a thorough review of the legislative history of the State Tort Claims Act, § 81-8,214, and a careful reading of *Miller*, *Catania*, *Wickersham*, and *Pointer*, decided by this court, I must express regret that I am unable to join in the majority opinion. It may be that the public policy of the State of Nebraska should be changed so that its State Tort Claims Act may be brought into line with the Iowa Tort Claims Act, or other similar state acts, but this is a matter I believe should clearly be done by the Legislature, upon whose shoulders Neb. Const. art. V, § 22, cited above, has placed the responsibility. In view of the considerations and distinctions articulated in the legislative and judicial authorities cited herein, I submit that the judgment of the district court appealed from should be affirmed.

CAPORALE, J., joins in this dissent.