Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/14/2022 08:10 AM CST

- 302 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

Timothy Moore, appellant, v. Nebraska
Accountability and Disclosure
Commission, appellee.

___ N.W.2d ___

Filed October 22, 2021.    No. S-20-753.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

2. **Judgments: Appeal and Error.** Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.

3. ____: ____. An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.

4. **Statutes: Appeal and Error.** The interpretation of statutes presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

5. **Public Officers and Employees: Contracts.** Neb. Rev. Stat. § 49-14,103.01(5) (Reissue 2010) provides an exemption from the general prohibition against an officer having an interest in any contract with his or her governing body, when all of the following conditions are met: (1) The contract is an agenda item approved at a board meeting; (2) the interested officer makes a declaration on the record to the governing body regarding the nature and extent of his or her interest

- 303 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

before official consideration of the contract; (3) the interested officer does not vote on matters relating to the contract, including making payments pursuant to the contract or accepting performance of work under the contract; and (4) the interested officer does not act for the governing body as to any inspection or performance under the contract.

6. ____: ____. When an officer complies with the disclosure and abstention requirements set out in Neb. Rev. Stat. § 49-14,103.01(5) (Reissue 2010), he or she can avoid violating the general prohibition against having an interest in any contract to which his or her governing body is a party.

7. **Statutes: Legislature: Intent.** When construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

8. **Statutes: Appeal and Error.** The rules of statutory interpretation require an appellate court to give effect to the entire language of a statute, and to reconcile different provisions of the statutes so they are consistent, harmonious, and sensible.

9. **Contracts: Parties.** A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances.

10. **Contracts: Parties: Intent.** An implied contract arises where the intention of the parties is not expressed in writing but where the circumstances are such as to show a mutual intent to contract.

11. ____: ____: ____. The determination of the parties' intent to make a contract is to be gathered from objective manifestations—the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction. If the parties' conduct is sufficient to show an implied contract, it is just as enforceable as an express contract.

12. ____: ____: ____. The determination of the parties' intent to make a contract is normally a question of fact.

13. **Appeal and Error.** An appellate court does not consider errors which are argued but not assigned.

Appeal from the District Court for Buffalo County: Ryan C. Carson, Judge. Affirmed.

James R. Korth, of Reynolds, Korth & Samuelson, P.C., L.L.O., for appellant.

- 304 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

Douglas J. Peterson, Attorney General, and Lynn A. Melson for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

After an evidentiary hearing, the Nebraska Accountability and Disclosure Commission (NADC) determined that Timothy Moore, while serving as the chair of the board of trustees for the village of Madrid, Nebraska (Village Board), violated the Nebraska Political Accountability and Disclosure Act (NPADA)[1] by having an interest in a contract with the Village Board and failing to comply with the disclosure and abstention requirements of § 49-14,103.01(5). The NADC imposed a civil penalty of $500 for the violations. Moore filed an administrative appeal, and the district court affirmed the NADC's decision. Moore appeals again, assigning error to the district court's finding that he had an interest in a contract with the Village Board sufficient to trigger the disclosure and abstention provisions of § 49-14,103.01. We affirm the judgment of the district court.

BACKGROUND

The pertinent facts in this matter are undisputed. The village of Madrid is governed by a five-person Village Board. From 1998 through 2016, Moore served as the chair of the Village Board. Pursuant to Nebraska statute at the time, "the annual salary of the chair[person] and other members of the [village] board of trustees shall be fixed by ordinance"[2] and "[n]o officer shall receive any pay or perquisites from the [village] other than his or her salary."[3]

---

[1] Neb. Rev. Stat. §§ 49-1401 to 49-14,142 (Reissue 2010 & Cum. Supp. 2016).

[2] Neb. Rev. Stat. § 17-209 (Reissue 2012).

[3] Neb. Rev. Stat. § 17-611 (Reissue 2012).

- 305 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

Our record does not contain an ordinance for the village of Madrid addressing the annual salary of the Village Board, but the parties generally agree that in 2014, the chair of the Village Board was entitled to compensation of $150 for each regular monthly meeting he or she attended, for a total annual compensation of $1,800. In December 2014, the Village Board passed a "Resolution" increasing the chair's compensation to $300 per regular monthly meeting attended, for an expected annual compensation of $3,600. From 1998 through 2016, Moore regularly received the authorized compensation for attending monthly meetings of the Village Board.

During 2014, 2015, and 2016, Moore performed certain work for the village beyond the normal duties of the chair of the Village Board and he regularly submitted requests to be paid for such work at an hourly rate. This additional work, and the manner in which Moore requested and received payment for that work, is at the heart of this appeal.

Moore's payment requests for the additional work were reviewed during the monthly Village Board meetings, but were not listed as agenda items. Moore typically did not declare his interest on the record in such requests before they were considered, nor did he abstain from voting on or approving his own payment requests. The Village Board regularly approved and paid Moore's requests for additional compensation. The record contains Internal Revenue Service tax forms showing the village paid Moore "[n]onemployee compensation" of $9,528.68 in 2014, $8,898 in 2015, and $14,490.50 in 2016.

## NADC Complaint

In April 2017, a village resident filed a complaint against Moore with the NADC. Ultimately, Moore was notified that he was being investigated for 11 alleged violations of the NPADA.

Two of the alleged violations pertained to § 49-14,101.01(1), which provides, in part:

> A public official or public employee shall not use or authorize the use of his or her public office . . . to

- 306 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

obtain financial gain, other than compensation provided by law, for himself or herself, a member of his or her immediate family, or a business with which the individual is associated.

The NADC's notice alleged that in 2015 and 2016, while holding public office, Moore requested and received compensation other than that allowed by law, in violation of § 49-14,101.01(1).

Nine of the alleged violations pertained to § 49-14,103.01, which at the time provided, in relevant part:

(2) . . . [N]o officer may have an interest in any contract to which his or her governing body, or anyone for its benefit, is a party. The existence of such an interest in any contract shall render the contract voidable by decree of a court of competent jurisdiction as to any person who entered into the contract or took assignment of such contract with actual knowledge of the prohibited conflict.

. . . .

(4) The prohibition in this section shall apply only when the officer . . . (b) will receive a direct pecuniary fee or commission as a result of the contract.

(5) The prohibition in this section does not apply if the contract is an agenda item approved at a board meeting and the interested officer:

(a) Makes a declaration on the record to the governing body responsible for approving the contract regarding the nature and extent of his or her interest prior to official consideration of the contract;

(b) Does not vote on the matters of granting the contract, making payments pursuant to the contract, or accepting performance of work under the contract, or similar matters relating to the contract, except that if the number of members of the governing body declaring an interest in the contract would prevent the body with all members present from securing a quorum on the issue, then all members may vote on the matters; and

- 307 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

(c) Does not act for the governing body which is party to the contract as to inspection or performance under the contract in which he or she has an interest.

The NADC's notice alleged that in 2014, 2015, and 2016, Moore had an interest in one or more contracts with the village, and that when submitting claims for payment under those contracts at monthly Village Board meetings, he failed to include the claims as agenda items, failed to declare an interest in the claims, and failed to abstain from voting on the claims, in violation of § 49-14,103.01(5).

After conducting its investigation, the NADC found "probable cause" that one or more of the violations alleged in the notice had occurred.[4] It notified Moore that a hearing would take place to determine whether he violated the NPADA and, if so, whether civil penalties should be assessed.[5] There is no suggestion in the record that the NADC referred the matter for consideration of a possible criminal violation of the NPADA.[6]

## NADC Hearing

A hearing officer was appointed, and an evidentiary hearing was conducted in Kearney, Nebraska. The evidence adduced during that hearing was generally consistent with the facts described above.

Moore testified at the hearing. He explained that in 2014, 2015, and 2016, in addition to his ordinary board duties, he performed extra work for the village. According to Moore, this extra work included filling in for the village utilities superintendent when that employee was ill or absent, working on the village budget and audit, working with the attorney retained by the village to address ongoing legal issues related to a failure in the village's wastewater treatment facility, and performing miscellaneous "chores" for the village. Moore

---

[4] See § 49-14,125.

[5] See § 49-14,126.

[6] See, e.g., §§ 49-14,124.02 and 49-14,133. See, also, § 49-14,103.04.

testified that he was asked by the Village Board to perform this extra work and that all of the work was preapproved by the Village Board.

Moore also admitted that from 2014 to 2016, he regularly submitted payment requests to the Village Board for the extra work he performed. He charged an hourly rate for his services, and he testified that this hourly rate had been preapproved by the Village Board. The Village Board considered and approved Moore's payment requests during its regular monthly meetings, and Moore accepted the payments when they were made. These payments were in addition to Moore's annual compensation as the chair of the Village Board.

Moore further admitted that when submitting the payment requests, he did not list them as agenda items for the Village Board meetings, he typically did not declare his interest in the requests before they were considered, and he did not abstain from voting on the requests. Moore claimed he was not required to comply with the disclosure and abstention provisions of § 49-14,103.01(5), because during the relevant timeframe, he did not have any contracts with the village for the additional work he performed. He also argued that he was not subject to the requirements of § 49-14,103.01(5), because he performed the extra work as an "employee" of the village, rather than an officer.

## NADC Order

In an order issued September 13, 2019, the NADC determined there was not sufficient evidence to establish violations of § 49-14,101.01(1). No party has appealed from that determination, and we do not comment on it further.

Regarding the alleged violations of § 49-14,103.01(5), the NADC found that each month during the relevant time period, Moore submitted a request to be paid at an hourly rate for additional work performed on behalf of the village and the Village Board regularly approved and paid these requests. It also found that Moore failed to include his payment requests

- 309 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
310 NEBRASKA REPORTS
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

on the monthly meeting agendas, failed to declare his interest in the requests, and failed to abstain from voting on the requests. The NADC concluded that the conduct of the parties showed Moore had formed implied contracts with the Village Board to perform extra work for a set hourly rate and that Moore failed to comply with the disclosure and abstention requirements of § 49-14,103.01 when seeking payment under those contracts.

The NADC rejected Moore's contention that he was not subject to the requirements of § 49-14,103.01(5) because he had performed the extra work as an "employee" of the village rather than an officer. Instead, the NADC found that Moore was acting as an officer of the Village Board at all times and had performed the extra work "in an effort to fulfill his perceived duty as a member of the [V]illage [B]oard." It therefore unanimously concluded Moore was subject to, and had violated, the disclosure and abstention requirements of § 49-14,103.01 in 2014, 2015, and 2016. It assessed a single civil penalty of $500 for all of the violations.[7]

### ADMINISTRATIVE PROCEDURE ACT APPEAL

Moore filed a timely petition in the district court for Buffalo County, seeking judicial review of the NADC's decision under the Administrative Procedure Act (APA).[8] As pertinent here, Moore assigned error to the NADC's determination that he entered into contracts with the Village Board to perform additional services for an hourly rate. Moore's primary argument was that he had not entered into any contracts with the Village Board to perform the additional work, so the provisions of § 49-14,103.01(5) did not apply to his requests to be paid for such work. Alternatively, he argued that § 49-14,103.01 did

---

[7] See § 49-14,126 (authorizing NADC to order violators to pay "a civil penalty of not more than two thousand dollars for each violation of the act, rule, or regulation").

[8] See Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2014 & Cum. Supp. 2020).

- 310 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

not apply, because he was performing the extra work as an employee of the village, and not as an officer.

In an order entered September 18, 2020, the district court rejected both of Moore's arguments. The court agreed with the NADC that the evidence showed there was an implied contract between Moore and the village for the additional work, reasoning:

[T]he evidence shows that [Moore] agreed to perform certain tasks beyond the normal duties as Chairman of the Village Board, and did so at the board's request. While it is clear that [Moore's] motivation was to serve his community, the evidence shows he was offered consideration or payment for those services in the form of compensation at an hourly rate. This compensation was extra pay in addition to his salary and is generally prohibited by statute. *See Neb. Rev. Stat.* §17-611 ("No officer shall receive any pay or perquisites from a . . . village other than his or her salary"). The parties proceeded in this manner from 2014 to 2016, and [Moore's] invoices were regularly approved by the Village Board every month. Accordingly, the parties' conduct and the surrounding circumstances are sufficient to indicate the existence of a contract, implied or otherwise.

The district court also rejected Moore's contention that the disclosure and abstention requirements of § 49-14,103.01(5) did not apply because he had performed the extra work as an "employee" of the village, not as an officer. The court held that Moore was serving as a Village Board trustee at all relevant times, and under Neb. Rev. Stat. § 17-209.02 (Reissue 2012), trustees are not allowed to simultaneously perform the duties of a village employee, unless they are performing "seasonal or emergency work" for the village. Moreover, the court reasoned that even if some of Moore's extra work could be considered permissible "seasonal" or "emergency" work, that would not allow him to avoid the disclosure and abstention requirements of § 49-14,103.01, because under § 17-209.02 as it existed

- 311 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

during the relevant time period, a trustee could not be compensated for such work absent board approval and compliance with § 49-14,103.01.[9]

The district court therefore affirmed the NADC's decision in all respects. Moore filed this timely appeal, which we moved to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Moore assigns that the district court erred in affirming the decision of the NADC based on a finding that he "entered into contracts with the Village of Madrid in 2014, 2015, and 2016."[10]

## STANDARD OF REVIEW

[1] A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[11] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[12]

[2] Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.[13]

[3] An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its

---

[9] See § 17-209.02 (prohibiting governing bodies from merging duties of trustee with duties of any other office or employment "except that trustees may perform and upon board approval receive compensation for seasonal or emergency work subject to sections 49-14,103.01 to 49-14,103.06").

[10] Brief for appellant at 3.

[11] *Big Blue Express v. Nebraska Dept. of Rev.*, 309 Neb. 838, 962 N.W.2d 528 (2021).

[12] *Id.*

[13] *Id.*

factual findings for those of the district court where competent evidence supports those findings.[14]

[4] The interpretation of statutes presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[15]

## ANALYSIS
### § 49-14,103.01

Section 49-14,103.01(2) of the NPADA provides that "no officer may have an interest in any contract to which his or her governing body, or anyone for its benefit, is a party." For purposes of this prohibition, the NPADA defines "officers" to include "a member of any board or commission of any . . . village which spends and administers its own funds, who is dealing with a contract made by such board or commission."[16] Moore does not dispute that as a trustee of the Village Board, he was an "officer" subject to the general prohibition against having an interest in any contract in which the Village Board is a party. His contention is that he had no contract with the Village Board to perform extra work for an hourly rate.

Before addressing the merits of this contention, we pause to note that under earlier codifications of this statute, when an officer had an interest in a contract to which his or her governing body was a party, the contract was deemed void as a matter of law.[17] But under the current statutory scheme, the existence of a prohibited interest renders the contract voidable

---

[14] *Id.*

[15] *Vokal v. Nebraska Acct. & Disclosure Comm.*, 276 Neb. 988, 759 N.W.2d 75 (2009).

[16] § 49-14,103.01(1).

[17] See, e.g., *Heese v. Wenke*, 161 Neb. 311, 73 N.W.2d 223 (1955) (holding § 17-611 prohibited village officer from having interest in any contract to which village was party and rendered any such contract void); *Neisius v. Henry*, 142 Neb. 29, 5 N.W.2d 291 (1942) (holding Comp. Stat. § 17-517 (1929) prohibited village officer from having interest in any contract with village and such contracts were void for all purposes).

- 313 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

by court decree under certain circumstances.[18] We are aware that § 49-14,103.01 was amended in several respects in 2020 and 2021,[19] but we confine our analysis to the statute as it existed in 2014 through 2016.

[5,6] Section 49-14,103.01(5) provides an exemption from the general prohibition against an officer having an interest in any contract with his or her governing body, when all of the following conditions are met: (1) The contract is an agenda item approved at a board meeting; (2) the interested officer makes a declaration on the record to the governing body regarding the nature and extent of his or her interest before official consideration of the contract; (3) the interested officer does not vote on matters relating to the contract, including making payments pursuant to the contract or accepting performance of work under the contract; and (4) the interested officer does not act for the governing body as to any inspection or performance under the contract.[20] When an officer complies with the disclosure and abstention requirements set out in § 49-14,103.01(5), he or she can avoid violating the general prohibition against having an interest in any contract to which his or her governing body is a party.

As stated, Moore concedes he did not comply with the disclosure and abstention requirements of § 49-14,103.01(5) when seeking payment for the extra work, but he contends that compliance was not necessary, because he had no interest in a contract with the Village Board sufficient to trigger the statute. We address this contention next, and we reject it.

## Moore's Interest in Contract

The NPADA does not expressly define "an interest in any contract" as used in § 49-14,103.01, and we have not previously construed this provision of the statute. In doing so now, we apply familiar principles of statutory construction.

---

[18] § 49-14,103.01(2).

[19] See, e.g., 2021 Neb. Laws, L.B. 65, § 1; 2020 Neb. Laws, L.B. 1055, § 19.

[20] See § 49-14,103.01(5)(a) through (c).

- 314 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

[7,8] When construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[21] Additionally, the rules of statutory interpretation require an appellate court to give effect to the entire language of a statute, and to reconcile different provisions of the statutes so they are consistent, harmonious, and sensible.[22]

Although the Legislature has not expressly defined "an interest in any contract" for purposes of § 49-14,103.01, the plain language of the statute provides considerable guidance as to what the phrase does, and does not, include. Some of that guidance is found in § 49-14,103.01[23] itself, and some is found in related statutes.[24]

As relevant here, § 49-14,103.01(4) states:

The prohibition in this section shall apply only when the officer or his or her parent, spouse, or child (a) has a business association as defined in section 49-1408 with the business involved in the contract or (b) will receive a direct pecuniary fee or commission as a result of the contract.

Moore does not dispute that he received a direct pecuniary fee or payment of money from the Village Board in exchange

---

[21] *Peterson v. Jacobitz*, 309 Neb. 486, 961 N.W.2d 258 (2021).

[22] *Id.*

[23] See, e.g., § 49-14,103.01(7) through (10) (identifying certain financial transactions that are not considered "contracts" and certain de minimis corporate ownership that is not considered "interest"; identifying certain employment contracts in which officers can vote even when officer's spouse, parent, or child is employee of governing body).

[24] See, e.g., § 49-14,103.03(1) (providing that "[a]n open account established for the benefit of any governing body with a business in which an officer has an interest shall be deemed a contract subject to sections 49-14,103.01 to 49-14,103.06"); § 49-14,103.06 (authorizing governing bodies to exempt "contracts involving one hundred dollars or less" from requirements of § 49-14,103.01).

- 315 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
310 NEBRASKA REPORTS
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

for performing the extra work. But he argues there was no evidence of a "mutual understanding or meeting of the minds"[25] sufficient to show he had a contract with the Village Board to perform the extra work for an hourly rate. We disagree.

[9-11] A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances.[26] An implied contract arises where the intention of the parties is not expressed in writing but where the circumstances are such as to show a mutual intent to contract.[27] The determination of the parties' intent to make a contract is to be gathered from objective manifestations—the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction.[28] If the parties' conduct is sufficient to show an implied contract, it is just as enforceable as an express contract.[29]

[12] Normally, the determination of the parties' intent to make a contract is a question of fact.[30] Here, the district court made an express factual finding that "the parties' conduct and the surrounding circumstances are sufficient to indicate the existence of a contract, implied or otherwise." We find competent evidence in the record to support this finding.

---

[25] *Linscott v. Shasteen*, 288 Neb. 276, 281, 847 N.W.2d 283, 289 (2014).

[26] *Linscott, supra* note 25. See, also, *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 856-57, 809 N.W.2d 725, 737 (2011) (explaining "'implied contract' refers to that class of obligations that arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words"); *Turner v. Fehrs Neb. Tractor & Equip.*, 259 Neb. 313, 609 N.W.2d 652 (2000) (noting there must be evidence of mutual intent to have implied contract).

[27] *Linscott, supra* note 25.

[28] *Id.*

[29] *Id.*

[30] *Kaiser v. Millard Lumber*, 255 Neb. 943, 587 N.W.2d 875 (1999).

Moore testified that in 2014, 2015, and 2016, the Village Board asked him to perform additional work for the village and preapproved this additional work, as well as the hourly rate for such work. Moore testified that he regularly performed the additional work, describing that he felt an obligation to do so, after which he submitted requests to be paid at the agreed-upon hourly rate. The Village Board took up Moore's payment requests at its regular monthly meetings, and the record leaves no question that those requests were routinely approved and paid.

We agree with the district court's conclusion that the parties' conduct and the surrounding circumstances demonstrate a mutual intent sufficient to show there was an implied contract to have Moore perform additional work for the village in exchange for compensation at a set hourly rate. Indeed, without such a contract, there is nothing in the record that explains why Moore performed the extra work, why the Village Board paid him for such work, and why Moore accepted this additional compensation. While we express no opinion on the propriety of such a contract, we soundly reject as meritless Moore's contention that the district court erred in finding he had a contract with the Village Board to perform extra work in exchange for an hourly rate.

[13] For the sake of completeness, we note that Moore devotes a significant portion of his appellate briefing to arguing that the disclosure and abstention provisions of § 49-14,103.01(5) did not apply to him, because he was acting as an "employee" of the village when he performed the extra work. Moore presented a similar argument in the district court, and that court rejected the argument as meritless under the plain language of § 17-209.02. Because Moore has not assigned error to that aspect of the district court's holding, we do not consider his arguments that he was acting as an employee when he performed the extra work. An appellate court does not consider errors which are argued but not assigned.[31]

---

[31] *State v. Jennings*, 308 Neb. 835, 957 N.W.2d 143 (2021).

- 317 -

Nebraska Supreme Court Advance Sheets
310 Nebraska Reports
MOORE v. NEBRASKA ACCT. & DISCLOSURE COMM.
Cite as 310 Neb. 302

## CONCLUSION

At all relevant times, Moore was a trustee of the Village Board and was therefore subject to the general prohibition against having an interest in any contract in which the Village Board was a party. He entered into contracts with the Village Board to perform additional work for the village in exchange for compensation at a set hourly rate. He then regularly requested payment under such contracts, and he violated § 49-14,103.01(5) when he failed to place the requests on the agenda of the monthly Village Board meetings, failed to declare his interest in the requests on the record before the matters were considered, and failed to abstain from voting on and approving his requests.

While the record shows that Moore's primary motivation for agreeing to perform the extra work was to serve his community, noble intentions do not exempt him from the disclosure and abstention requirements of § 49-14,103.01(5). As the Legislature has recognized, it is essential to the proper operation of democratic government that public officials be independent and impartial and that end is impaired when there exists, or appears to exist, a substantial conflict between the private interests of a public official and his or her official duties.[32] Although the vast majority of public officials are dedicated and serve with high integrity, the public interest requires that the law provide greater accountability, disclosure, and guidance with respect to the conduct of public officials.[33]

The district court's judgment affirming the decision of the NADC conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. We therefore affirm the judgment.

Affirmed.

---

[32] See § 49-1402(3) and (4).

[33] See § 49-1402(4).